## STERNBERG *v.* BAXTER.

1. APPEAL AND ERROR—CHANCERY CASES—RECORD.

> The record on appeal in an equity case should be in such comprehensive shape as to permit on review the determination of all issues necessary to a final grant or denial of relief as the nature of the fully assembled case may require, and so that the single decree may properly apportion liabilities among all parties before the court interested in the situation involved and the incidental or consequential claims or interests of all be fixed.

2. EQUITY—PARTIAL REHEARING—TRANSFERS OF CORPORATE STOCK—PLEDGES.

> Partial rehearing of suit by creditor of stockholder, limited to rights, interests, and liabilities attendant upon a disposition of a 25% interest in defendant corporation is ordered, where it appears that such stock had been pledged with plaintiff, and later actually transferred to another stockholder by the individual defendant who was financially involved with others not presently before the court (CL 1948, §§ 441.1, 566.501).

Appeal from Wayne; Holbrook (Donald E.), J., presiding. Submitted December 4, 1963. (Calendar No. 110, Docket No. 49,849.) Decided May 4, 1964.

Bill by Jack F. Sternberg against Claude J. Baxter and Barrett & Baxter Manufacturing Company, a Michigan corporation, for foreclosure of pledged corporate stock and of mortgage and chattel mortgage given to secure personal loan, and for attendant relief. Cross-bill by corporation against plain-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error §§ 397, 532.
[2] 19 Am Jur, Equity § 417.

tiff and defendant Baxter for cancellation of stock certificates and other instruments as forgeries, and for discharge thereof from record. Decree for defendant and cross-plaintiff granting relief except as to 300 shares of corporate stock pledged by defendant Baxter. Defendant corporation appeals claiming transfer of Baxter's stock already made on its corporate record books. Reversed and remanded for partial rehearing.

*Albert Lopatin* (*Norman L. Zemke,* of counsel), for plaintiff.

*Rudolph J. Zabel* and *David S. Levi,* for defendant and cross-plaintiff.

SMITH, J.

### PARTIES TO THE ACTION.

Plaintiff Sternberg, who initiated this suit, lent money to defendant Baxter, a stockholder and officer in the Barrett & Baxter corporation. Baxter issued a number of forged instruments to Sternberg. The corporation is a small, family-type operation. Baxter grew up "as a son" in the home of the founder, Charles H. Barrett, who died prior to the transactions giving rise to this litigation. Sternberg filed his bill seeking relief against Baxter and the corporation. The corporation responded with answer and cross-bill against both Sternberg and Baxter, also seeking affirmative relief. Both bills claim fraud on the part of Baxter, who did not respond by appearance and answer although personally served. However, Baxter was called as a witness for purposes of statutory cross-examination* but refused on constitutional grounds to answer several questions. He

---

* CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

did indicate, however, that he had been convicted
of a specie of fraud practiced upon persons other
than plaintiff. Later it was shown that although
Baxter is no longer an officer of the corporation he
is engaged as an employee.

The corporation takes general appeal from a de-
cree and an order denying rehearing thereon. It
seeks not full reversal of the decree which granted
it, as cross-plaintiff, substantial affirmative relief;
it asks that certain allegedly ambiguous paragraphs
be stricken from the decree and language more fa-
vorable to it be inserted. Plaintiff Sternberg asks
for affirmance of the decree as drawn. Baxter, who
did not contest, of course is not here on appeal. Be-
cause of the somewhat unusual nature of relief,
sought and to some extent indicated, the scope of
the issues is outlined in the pleadings and argument.

## PLEADINGS.

A. *Plaintiff's bill of complaint.* Plaintiff Stern-
berg filed his bill of complaint October 7, 1958, al-
leging that on December 24, 1957, Baxter had exe-
cuted a promissory note and pledge of stock to
plaintiff for a sum certain, and that in order to se-
cure payment, defendant corporation, by its duly
authorized officers, executed and delivered to plain-
tiff a covenant of guaranty, a chattel mortgage
covering machinery and equipment, and a real-
estate mortgage; and that further, to secure pay-
ment, the corporation, by its officers, also executed
and delivered to plaintiff a certain security covenant
to preserve corporate assets.

Plaintiff alleged further that on April 10, 1958,
Baxter made another note and pledge of stock, and
likewise a similar transaction on July 29, 1958.
Plaintiff claimed to have in his possession at that
time 6 stock certificates constituting 1,200 shares,
all of the common stock of the corporation.

It was alleged that Baxter had failed to make payments as provided in the promissory notes and pledges of stock and therefore was in default thereon. It was also alleged that defendant corporation had breached a security covenant to preserve corporate assets, and that as a result was in default of its obligations. Plaintiff asked for injunctive relief against Baxter and the corporation, for a determination of the balance due on the promissory notes, for the appointment of a receiver, and for a decree of foreclosure and sale to satisfy the real and chattel mortgages and pledges of stock. A decree for the deficiency, if any, was also requested.

B. *The corporation's answer and cross-bill.* The corporation answered by admitting, on information and belief, that Baxter had executed promissory notes and pledges of stock, but said that the acknowledgments thereon were forgeries and that any stock certificates mentioned therein were also forgeries. The corporation denied as to each instrument in question that either was executed with the knowledge and consent of the corporation. Consequently, it was alleged that the corporation was not in default of any instruments because it had not executed any instruments. It averred that at no time was Baxter or any other person authorized to deal with plaintiff on its behalf, and that all such dealings between plaintiff and Baxter were for Baxter's individual benefit, and that none of the proceeds derived therefrom were received by the corporation or for its account.

As aforesaid, the corporation filed a cross bill against both Sternberg and Baxter. It stated therein that any signatures to instruments purportedly executed on behalf of the corporation are not genuine signatures of said officers except that the Baxter signature where it appears is genuine. It is reiterated that the shares of stock were not genuinely

issued and "that the same are fraudulent and are forgeries." It is alleged that Baxter was never the owner of 1,200 shares of stock in the corporation. The cross bill alleges against plaintiff Sternberg, on information and belief, that of the several amounts loaned to Baxter by Sternberg for which notes and pledges were taken, approximately $5,000 of said sums include "bonuses" or hidden interest charges. The corporation says that if Sternberg did rely on the genuineness of the several instruments he did so recklessly and because of anxiety to obtain excessive profit from the transaction. As against Baxter, its former stockholder and officer, the corporation alleges that he wilfully and deliberately caused the instruments to be drafted with the appearance of being corporate acts, and that this was for his personal gain and not that of the corporation.

The cross bill was signed by Sylvia Thomas as an officer and director of the corporation. The cross bill asked for injunctive relief against plaintiff selling or in any way disposing of the forged stock certificates; it asked for a decree voiding the real and chattel mortgage on file in the offices of the register of deeds for Wayne county; and for mandatory injunction requiring plaintiff Sternberg to deliver up for cancellation all of the fraudulently executed instruments and stock certificates. A prayer for general relief was also included.

### Trial Court's Disposition.

In a comprehensive opinion, Judge Holbrook discussed the evidence exhaustively. The trial court's opinion is quoted in part as follows:

"There was no knowledge of this loan by any of the members of the corporation other than Mr. Baxter, prior to August, 1958. * * * According to

the minutes of the corporation Mr. Baxter has transferred the 300 shares of common stock owned by him to Cedric Barrett. * * * This appears as of September 5, 1958.

"Now, it appears on page 165 of the second volume of the minutes taken in this case, Mr. Zabel found out on behalf of the corporation that there had been malfeasance or misfeasance in office on behalf of Mr. Baxter. This is stated to be approximately August 25, 1958. The transfer of the stock from Mr. Baxter to Mr. Cedric Barrett took place better than 10 days subsequent. * * * *Now, the Court does not believe that it would be equitable to allow the corporation to permit the transfer of the Baxter stock on the record books of the corporation when they had been apprised previously of the transfer of the stock by way of a pledge by Mr. Baxter for a personal debt. Now, there may be other assignments of this same stock because the court has been informed that Mr. Baxter has already been convicted in the recorder's court for a different loan* obtained by trick than the one involved here, there may be others and he may have assigned the stock on a previous occasion. *It would appear that if all we had was the facts deduced upon the trial, that the court would have to rule that the 300 shares of stock would be legally pledged to Jack F. Sternberg for the repayment of the actual money loaned, and that is the ruling of this court, subject, however, to the right of either party to request further evidence in regard to the same.* The parties may have 20 days within which to make a request for further testimony to be taken if they so desire, otherwise the court will allow a decree to enter denying any relief to the plaintiff on the 900 shares of stock, denying any relief under the other guarantees and mortgages purportedly signed by the corporation, but granting unto the plaintiff the right to a decree of foreclosure of the 300 shares of pledged stock owned by Claude J. Baxter at the time of the loan, to satisfy said loan insofar as the

actual money advanced is concerned, and in the event the plaintiff does not obtain sufficient money to pay the debt, that plaintiff may have a decree for the deficiency against the defendant Claude J. Baxter." (Emphasis supplied.)

The opinion was filed May 15, 1961, and on May 19, 1961, Barrett & Baxter Manufacturing Company pursuant to the court's opinion, filed a request "for the taking of testimony relating to pledge of 300 shares of its stock." This undoubtedly referred to the genuine Baxter shares transferred to Cedric Barrett. Plaintiff Sternberg filed objections to the taking of further testimony because, as he stated, the court's opinion granted no recovery whatsoever against the corporation but only against the personal interest of Baxter and, therefore, plaintiff was in no position to complain. The motion was denied.

The court's decree was filed November 27, 1961. As previously indicated by the court's opinion, the decree found that all of the signatures on the various instruments were forgeries with the exception of those of Baxter, and hence decreed that the real and chattel mortgages be canceled and held void, likewise as to the other instruments. The court found, however, that at the time of the delivery of the fraudulent stock certificates from Baxter to Sternberg defendant Baxter was in fact the registered owner of 300 shares of the common stock of the corporation. It is the decretal language with reference to the 300 shares owned by Baxter which is in dispute. It reads as follows:

"It is further ordered, adjudged and decreed that the plaintiff Jack F. Sternberg *shall have the right to a decree of foreclosure on the interest of Claude J. Baxter to the extent of his ownership and right in 300 shares* of Barrett & Baxter Manfg. Company common stock *at the time of said Baxter's borrowing moneys from the said Sternberg.*

"It is further ordered, adjudged and decreed that the defendant Claude J. Baxter is indebted to the plaintiff Jack F. Sternberg in the sum of $14,937 without interest for sums loaned to and received by him and that the plaintiff Jack F. Sternberg shall have a decree for said sum and for any deficiency remaining unpaid on foreclosure as next above provided." (Emphasis supplied.)

### ARGUMENT.

Appellant corporation submits that the decree should be amended by eliminating the last 2 paragraphs quoted immediately above and, in its place, "provide that Barrett and Baxter Manfg. Co., is *not indebted or obligated* to the plaintiff [Sternberg] in any sum whatsoever." The corporation claims that the decree, as entered, is "ambiguous and does not resolve the status of the corporation with respect to its obligation on outstanding shares." *What really disturbs the corporation is that, as it claims, "In any subsequent litigation between plaintiff Sternberg and any others to foreclose on Baxter's interest as of the date of his borrowing, there is the risk of construction of the decree as it stands as res judicata on the status of these shares and the validity of appellant's acts thereon, to appellant's detriment, if the error herein demonstrated remains unchallenged."*

The error which the trial court committed, appellant corporation argues, is the finding that the corporation had notice of misfeasance or malfeasance on the part of Baxter approximately 10 days before it transferred on the corporation's books the 300 shares, legitimately owned by Baxter, to Cedric Barrett, son of the deceased founder. Appellant claims that the only notice it had of Baxter's wrongdoing, at the time of the transfer, was the discovery of a forged mortgage involving a party

other than plaintiff Sternberg. The corporation says its first notice of Baxter's misconduct, as it relates to Sternberg, was when Sternberg filed his bill of complaint October 7, 1958.

By transferring the shares on its books the corporation says it was merely following the statute governing transfers of stock certificates, CL 1948, § 441.1 (Stat Ann 1959 Rev § 19.331), which provides, among other things, that transfers be accomplished by delivery of certificates; it insists that plaintiff Sternberg got nothing from Baxter at the time of the borrowings, notes and pledges, because Baxter did not deliver the legitimate certificates, only the "spurious forged certificates" which, the corporation says, do not meet requirements of the statute. The legitimate transfer, it says, was the one from Baxter to Cedric Barrett.

Further, the corporation claims, plaintiff acquired no interest in said 300 shares because he failed to file the pledge instrument in compliance with the statute on pledge of securities. CL 1948, § 566.501 (Stat Ann § 26.936). The corporation points out that the statute, in effect, provides that where a pledge of stock is made, which requires delivery of a stock certificate, and delivery is not made, the pledge is void against creditors unless the pledge instrument, or a copy, is filed in the office of register of deeds on the next business day. The corporation asserts that plaintiff's failure to comply with this requirement renders the corporation not liable to plaintiff. Plaintiff-appellee Sternberg acquiesces in the trial court's determination that he has no interest in 900 shares of stock not actually owned by Baxter, but supports the court's finding that he, plaintiff, should have foreclosure on the interest of Baxter "to the extent of his ownership and right" at the time of the borrowings. Plaintiff says if the corporation is fearful that it may, at some later

date, he required to honor *both* plaintiff's lien acquired by the decree *and* the transfer to Cedric Barrett, then this "fear of future reality cannot form the basis for present appeal."

Plaintiff argues that it would be "unconscionable" to permit the corporation to claim lack of knowledge of Baxter's wrongdoings in view of certain facts of record, particularly testimony of Mrs. Thomas who filed the cross-bill on behalf of the corporation. It was Mrs. Thomas' "suspicions" which led to discovery of a Baxter forged mortgage given to someone other than plaintiff.

Plaintiff argues further that the corporation's reliance upon statutes on stock transfer and pledges ignores the fraud committed by Baxter, especially under such "bizarre circumstances." Based upon reason and several cited cases, plaintiff concludes the decree should not be amended because it is within the proper exercise of discretion and has adequate factual support.

## DECISION.

From the summary above it is apparent that a bundle of complex issues, stated and also implicit, is involved in this lawsuit; some have been determined and others may be determined herein. Others may require additional litigation. What we need to do, to effectuate equity's purpose, is to determine what we can in this proceeding. In the recent case of *Kenny* v. *Village of Novi,* 367 Mich 75, this Court remanded an equity case to the trial court for further proceedings because the testimonial record was not in such comprehensive shape as to permit on review, *de novo,* all issues necessary to a final grant or denial of relief.

In the *Kenny Case,* the authority for this rule was given as follows:

"Relying upon the general rule of *Culy* v. *Upham,* 135 Mich 131, 135 (106 Am St Rep 388), we said recently (*Crocker* v. *Crocker,* 362 Mich 6, 8):

" 'When chancery cases are brought to this Court, the testimonial record should be in such comprehensive shape as to permit decision here, *de novo,* of all issues necessary to effectuation of equity's ultimate purpose, that of complete and final grant or denial of relief as the nature of the fully assembled case may require.' "

Thus, we see that equity required a testimonial record as comprehensive as possible in order to effectuate its purposes. Not only is there the necessity for a comprehensive record, but an equal necessity for all interested parties, insofar as is possible, to be before the court in order that equity may properly adjust its relief as the respective parties are entitled thereto. This facet of equity is summarized in 1 Pomeroy's Equity Jurisprudence (5th ed), § 114, pp 152, 153:

"The governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject-matter of that suit. * * * The primary object is, that all persons sufficiently interested may be before the court, so that the relief may be properly adjusted among those entitled, *the liabilities properly apportioned, and the incidental or consequential claims or interests of all may be fixed, and all may be bound in respect thereto by the single decree."* (Emphasis supplied.)

In an early case, *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich 274, 280, 281 (5 LRA 226, 13 Am St Rep 438), Justice Campbell set forth in comprehensive fashion the scope of equity as interpreted and applied by this Court. He wrote as follows:

"When any matter becomes involved in a chancery suit, *the necessities of justice and equity require that all persons and all things concerned in the controversy shall be brought before the court to have their respective interests charged or protected, and to end the controversy once for all.* Specific relief is generally required, and usually more or less of the defendants have conflicting interests to a greater or less extent, which require different issues and different treatment; *and these difficulties frequently become known or developed during the course of the investigation.*" (Emphasis supplied.)

What is apparent in this statement about the scope of equitable relief is that it will not infrequently develop "during the course of investigation" that different issues will develop requiring different treatment, if equity is to afford complete relief. Additional testimony may be required and additional parties may need to be added. It seems clear, perhaps more clear on review, that difficulties became known or developed during the trial of the instant case, which required adjudication of conflicting interests to an extent greater perhaps than was anticipated at the beginning of trial. Among other things, it was shown that Baxter had defrauded others in similar schemes, inferentially employing forged instruments similar to ones described above; some might have a bearing on this case, others not. We are also indeed mindful of the fact that the corporate records show a transfer of Baxter's lawfully held stock to Cedric Barrett. Whether innocently or by design, Cedric Barrett chose not to attempt to enter this case until after the trial judge's opinion had been filed; nevertheless, it is clear that a determination of his interest will have to be made either in this lawsuit or perhaps in one to follow.

We are chiefly concerned about the 25% interest (300 shares) in the common stock of the corporation

represented at present by a stock certificate in possession of Cedric Barrett, but which interest is encumbered by 1 of the quoted paragraphs in the decree set out above. It gives plaintiff "the right of a decree of foreclosure on the interest" of Baxter "to the extent of his ownership and right in 300 shares * * * at the time of said Baxter's borrowing moneys." Plainly the question will have to be answered, sooner or later, as to what interest has Cedric Barrett. Indeed, the prime question will be what interest, if any, has plaintiff Sternberg. This will involve a number of questions. Was the transfer from Baxter to Barrett supported by legal consideration? It is suggested that this was a convenient intra-family transfer without consideration. If there were notice to the corporation of Baxter's malfeasance prior to transfer, as the judge finds in his opinion, is the transfer yet within the purview of stock transfer and pledge statutes cited above? Assuming knowledge of malfeasance, what other factors are present as between Baxter, the corporation, and the plaintiff, which determine the varying rights and interests of these parties, not to the exclusion of other parties who might properly be impleaded? It may be that with available proper parties impleaded and additional facts adduced upon rehearing, all questions decisive of all issues may not be answered. However, those questions which are posed by the pleadings and the evidence, and which are implicit therein, ought to be answered so that equity may decree with finality all rights attendant upon the 300 shares, insofar as that may be possible in this proceeding.

The trial court recognized the incompleteness of the testimonial record by stating in its opinion that "It would appear that if all we had was the facts deduced upon the trial, that the Court would have to rule that the 300 shares of stock would be legally

pledged to Jack F. Sternberg." The court thereupon ruled that either party could, within 20 days, "request further evidence in regard to the same." When the corporation made a timely request, it was denied. In a related motion, the trial court denied the motion of Cedric Barrett to intervene, the reason being that Barrett was only one of a number of persons who might claim some interest in the 300 shares, the court said. Although we may share in the trial court's dismay at not having every single interested party impleaded in this case, yet we cannot escape the conclusion that when a person such as Cedric Barrett, who is holder of record of a 25% interest in common stock of the corporation, asks to intervene, his intervention might be thought proper if not necessary. If Barrett's delay is culpable and plaintiff is damaged thereby, equity may issue appropriate orders to do equity. What Barrett may offer as a party may be either inconsequential or it might be decisive, as to the rights surrounding the 300 shares; likewise, as to the other proper parties who might now feel persuaded to join the action.

In view, therefore, of the plain interest of Cedric Barrett in 25% of the common stock (300 shares) which interest is encumbered by a decretal right of foreclosure given plaintiff, and in view of other questions inherent in this controversy, some mentioned above, we think that a partial rehearing should have been ordered. The rights, interests, and liabilities attendant upon a disposition of the original Baxter 25% interest (300 shares) are separable from other issues in this case, that is, the forged instruments and certificates whose cancellation plaintiff concedes is proper. Therefore, a partial rehearing should be ordered as to the 300 shares. See *Mitchell* v. *Mitchell*, 333 Mich 441. Upon partial rehearing the trial court will amend the decree as to

disposition of the 300 shares in light of all evidence, original and supplemental.

The order denying rehearing is reversed and the cause remanded for further proceedings consistent with this opinion. Costs to appellant.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, and O'HARA, JJ., concurred.

ADAMS, J., took no part in the decision of this case.